**IRVING BANK CORPORATION, Plaintiff,**

v.

**The BANK OF NEW YORK COMPANY, INC.,**
**Defendant.**

**No. 88 Civ. 3542.**

United States District Court,
S.D. New York.

June 24, 1988.

Wachtell, Lipton, Rosen & Katz, New York City, for plaintiff; William C. Sterling, Jr., of counsel.

Sullivan & Cromwell, New York City, for defendant; Richard J. Urowsky, Janet Thiele, Lawrence Larose, of counsel.

HAIGHT, District Judge.

## ORAL DECISION FROM THE BENCH

I am ready to rule on the issues that have most recently come before this court. Those issues have to do generally with the sufficiency of additional disclosures made in a supplemental prospectus offered by the Bank of New York, and the issues presently before me also have to do with whether or not an amendment should be made to the original registration statement made in respect of Bank of New York shares which would be offered as part of the tender offer which lies at the heart of this litigation.

Thus, as prior proceedings reflect, both the 1933 Act and the 1934 Act, the Williams Act amendments are implicated in this litigation.

Owing to the exigencies of time, I am going to do my best to announce my rulings on the various points orally from the bench. I will do my best to explain my reasons. What will emerge will inevitably be unpolished, but one hopes coherent. If the matter is to be taken to a higher federal court, and particularly if the ruling announced this morning is to be made the subject of appellate review, I would ask only that counsel order copies of the transcript as quickly as possible so that it may be submitted to the court for the correction of any typographical errors.

I'm going to deal first with the perceived deficiencies in disclosure which the Irving bank contends are in the proposed supplement, and then I'll deal with the question of the 1933 Act amendment to the original registration statement. In what I'm about to say I assume familiarity with this court's opinion dated June 2, 1988. It is sufficient to say for present purposes that that opinion identified certain areas in which I concluded additional Williams Act disclosures should be made in the Bank of New York's prospectus.

I left it to counsel to debate among themselves in the first instance if disputes arose after the Bank of New York had drafted a proposed supplement and Irving had had an opportunity to consider the proposed supplement. Not surprisingly, certain areas of dispute emerged, but it is also gratifying to observe, and I commend counsel for both parties in this regard, that as the exchange of correspondence went on, areas of dispute were eliminated. Counsel responded affirmatively and positively to certain suggestions made by opposing counsel, and the original areas of dispute were significantly reduced.

In consequence, the need for judicial determination was significantly reduced. I commend counsel for that and wish to make something of a point of it because in cases of this nature when there is brisk and on occasion bitter litigation, one does not always see a willingness on the part of counsel, even in the heat of the battle, to consider seriously and sensibly what the opposing party says, but to a significant degree that spirit prevailed in this case, and I think counsel are to be commended for it.

The positions of the parties in respect of the adequacy or inadequacy of additional disclosure in the prospectus supplement are set forth in four letters, and I make the direction now that those four letters be docketed and made a part of the file in this case so that a full review at a later time, if required by anyone, will be possible.

These are letters which were sent by counsel to each other, with the court being favored with copies, and the four letters, which I think should be docketed and will be docketed, are these:

The Wachtell, Lipton letter of June 14, 1988 to Sullivan & Cromwell.

Sullivan & Cromwell's letter of June 17 to Wachtell, Lipton.

Wachtell, Lipton's letter of June 21 to Sullivan & Cromwell.

And Sullivan & Cromwell's letter of June 22 to Wachtell, Lipton.

And what has emerged as a result of that correspondence, and what comprises the document presently before me for decision is a prospective supplement, the particular version of which now before me is stamped in the upper right-hand corner "in-house-marked to show changes."

I am not certain if I have previously marked that particular document as a court exhibit on these hearings, but in any event, as I deliver this opinion I do so today. The document I have before me will be marked Court Exhibit 1 as of this date.

I think it useful to begin by simply reciting the history of the disputes as they first emerged and then in part, at least, were resolved in the exchange of correspondence to which I have referred. And it is not necessary in respect of points of initial dispute which were then resolved to say anything more about them, and so I will not do so.

For example, in the Wachtell letter of June 14 there was a point designated "first" on page 2. Sullivan & Cromwell responded to that point in its letter of June 17 at page 4 calling the Wachtell firm's attention to additional disclosures made in a further draft on June 21. Wachtell in its letter agreed that those changes were sufficient, and that dispute disappears.

The second point raised in the Wachtell letter of June 14 at page 2 dealt with the additional disclosures in the general area of antitrust. Sullivan & Cromwell replied in its letter of June 17, at page 3, and made some changes. The Wachtell letter of June 21st expressed dissatisfaction with those changes. The material in question appears on page 8 of the proposed supplement. That is a section captioned Antitrust and consisting of two paragraphs.

As to the first paragraph, the Wachtell firm made the point that the word "complete" should be deleted from a phrase appearing towards the end of the first paragraph. That phrase in its present form reads in part: "would not enjoy complete immunity." Mr. Sterling took the position that the word complete should be deleted. Initially Mr. Urowsky defended it, but in his letter of June 22, at page whatever, he agreed to delete the word "com-

plete" from the first antitrust paragraph, and so that will be done, and that area of dispute is resolved.

The Wachtell firm continues to profess dissatisfaction with the second antitrust paragraph, but I am not going to direct that it be changed further. It seems to me that the antitrust discussion, read in its entirety, accurately sets forth the potential risk, and Bank of New York's present intention. And I simply do not perceive in the language that irreconcilable tension implicating antitrust principles, which Irving professes to see. Therefore, I will direct no further change in the antitrust discussion except the deletion of the word "complete," which is agreed.

In the Wachtell letter of June 14 at page 4 a point was raised with respect to the description in the settlement of recent litigation developments. The correspondence went back and forth a bit on that, but at the oral argument held last Tuesday it became apparent that the dispute narrowed itself down to one particular phrase appearing at the top of page 5 of the proposed supplement. That phrase undertakes to summarize or characterize what this court did in its initial decision. It is said in the proposed supplement:

"The district court did not find the original offer documents (which were part of the purchaser's proxy materials) to be defective, but merely ordered supplemental disclosure of events which occurred a month or more after the purchaser's shareholder meeting."

I think that that is an accurate and sufficient paraphrase. It is arguable, I suppose, that by ordering supplemental disclosure defects under the securities laws were identified by the court and ordered to be remedied, but as I said during the Tuesday hearing, what prompted the original application before me was the revised offer made by the Bank of New York on May 17th. It was that revised offer which brought the litigation pot or pots—so that do not slight Justice Cahn—to that boil which I have referred to in prior opinions.

Essentially, it seems to me, what I have been dealing with in this litigation has been

events generated by and subsequent to the action taken by Bank of New York on May 17th, and because that is my perception, it seems to me that the Bank of New York makes a sufficient and an accurate disclosure when it says that I did not find the original offer documents to be defective. In truth, I did not. I found that events had occurred subsequent to those original offer documents which required additional disclosure. The Bank of New York did not wish to make that additional disclosure, and that was what the litigation before me was about, and when I finally said that additional disclosure must be made, the Bank of New York was quoted in the press as saying, of course they were delighted to do so, which made me wonder a bit what the litigation had been about, but I do think that the phrase which I read is an accurate one for the reasons I have attempted to state, and accordingly, I will direct no further change in it.

In the Wachtell letter of June 14 at page 5, a fourth point of objection was made. Sullivan & Cromwell responded to that point of objection and made certain changes, and in its letter of June 21, at pages 5 and 6, the Wachtell firm expressed satisfaction with those changes, and that point disappears from contention.

So too with the fifth point appearing on page 6 of the Wachtell letter of June 14th. The Sullivan & Cromwell letter of June 17 refers to certain changes. The Wachtell letter of June 21 at page 6 expresses satisfaction with those changes, and the dispute is resolved.

And so with the sixth point referred to on page 6 of the Wachtell letter of June 14th. Further disclosure is summarized in Sullivan & Cromwell's letter of June 17 at page 6. And in the Wachtell letter of June 21 at page 6, their satisfaction is expressed, and that dispute disappears.

So I come to what has been referred in the correspondence as the seventh and eighth points. These are accounting points. They were not before me earlier, and it is easy to understand why. The litigation was not at that point. I think it fair to say that the points at issue, points

seven and eight, arise out of a particular direction that I made in my opinion of June 2.

The question arises in the context of the Federal Reserve Board's letter to the Bank of New York of May 24. I refer to that letter from the Federal Reserve Board at page 16 of my opinion of June 2. I there pointed out that the Federal Reserve Board had made additional demands and asked certain questions of the Bank of New York, and I pointed out that in response to correspondence with the Federal Reserve Board, the Bank of New York had to furnish the Federal Reserve Board with updated pro forma financial statements.

■ Within the context of further disclosures to be made to Irving shareholders, I said this in the prior opinion:

"The updated pro forma financial statements must be disclosed to the extent that they modify or clarify financial statements contained in the original prospectus. I make that direction in principle and leave it to counsel to execute it in practice. The court will resolve disputes in case of need."

Well, there seems to be a need. I ended that section with this sentence:

"In any event, the projected dividend requirements I have quoted must be disclosed."

I think it fair to say that the seventh and eighth points of dispute arise out of that particular direction, and the points take us into proper accounting practice, and such bastions of accounting as GAAP are invoked by the parties. I am told that GAAP has either been adhered to or departed from, all in the context of what the Bank of New York has said to the Federal Reserve Board within the context of that correspondence, which I have said must be generally disclosed.

The conclusion I reach with respect to the seventh and eighth points of dispute is this:

I do not propose to adjudicate who is right and who is wrong on these accounting points. I do not think that adjudication by the district court at this time of these points is necessary for me properly to discharge the obligations that fall upon the district court under the securities laws. That was my instinctive reaction when I declined the invitation of counsel on Tuesday to take evidence from an accounting expert, and in reflecting on the matter I have not departed from that initial reaction.

In the context of Securities Act disclosure I think what must be done is this. I think that the supplemental prospectus must include a reference to and fair description of the particular claims and criticisms that the Irving bank makes in respect of these accounting points, and, of course, the supplement may also include the Bank of New York's own views and defenses with respect to them. It is analogus, it seems to me, to the antitrust situation and generally to situations where an offeror is aware of an adverse claim with which he does not agree.

I appreciate that what I have just said requires further drafting by Bank of New York and further review by Irving. I'm not entirely happy with that because I foresee the possibility of yet another exchange of correspondence, but again, as a practical matter, I cannot do more than speak in terms of principle and leave it to counsel in practice. I would hope that further litigation would not be generated by this direction, and I summon in that regard to my own aid, if not the aid of the parties, that spirit of cooperation among counsel which I have previously commented on favorably.

These are my directions with respect to the disclosure points.

■ I come now to whether or not the original registration statement should be amended, an action, which if directed, would require the SEC to consider the matter anew, and to pass again upon the effectiveness of the registration statement.

Mr. Sterling says that must be done in order to protect investors.

Mr. Urowsky says first that is not necessary. The filing of a supplemental prospectus, which is what we have been talking about up to now, will be sufficient, and secondly, and this is a particular point that

he makes, to require at this time, given the July 9th deadline imposed by the Federal Reserve Board, this degree of SEC review could quite possibly, as a practical matter, prove fatal to the Bank of New York offer.

Mr. Sterling says in reply that the Bank of New York really should not worry about that. Meaning no disrespect, it is easy for him to say so. The Bank of New York does worry about it, and given the uncertainty of predicting the speed with which bureaucratic wheels turn, particularly in the presence of an intervening federal holiday weekend, I am not prepared to say that the concern is an illusory or ungrounded one.

It seems to me that it is Irving Bank's burden to persuade me that the 1933 Act requires an amendment to the original registration statement. I am asked to make an order directing that that be done. I am asked, in short, for an injunction of a particular form.

Injunctions are given or withheld by courts of equity. It seems to me right to consider this particular request of the court sitting in equity as the court of equity traditionally considers orders it is asked to make. There must be a balance between what is asked and that consequence, potentially at least, of what is asked. The legitimate interests of everyone involved must be considered. By everyone involved, I mean the Bank of New York and its officers and directors; the Irving Bank and its officers and directors; those two groups who have been in an adverse relationship to each other throughout most of this litigation; and also, of course, I am bound to consider the interests of those persons for whom the securities laws were enacted in the first place: shareholders. Not in this case the investing public at large. We are not dealing with an initial issue. We are dealing with Irving shareholders present or those who might buy shares between now and then, confronted with a particular tender offer.

Mr. Sterling says, understandably enough, that in arguing for amending the registration statement, he is speaking for shareholders. He is fighting to protect their interests.

This is a statement, a protestation which judges are used to hearing in a context such as this. I do not wish to sound cynical, nor do I wish to be understood as being critical in any way of Mr. Sterling when I suggest at least the possibility that he may be motivated by considerations other than concern for shareholders. It is not quite the same situation as a private attorney generally suing to redress a civil wrong, a violation of civil rights statutes in which the only issue is the protection of the public good, but it does not follow, of course, that my responsibility to consider the public good is in any way diminished.

So I come back to whether or not, on balance, and in the totality of the circumstances, Irving has shown that the registration statement must be amended to reflect the more recent events with which this litigation has been concerned. I think it fair to say that to the extent the various SEC publications address the issue, I must be satisfied that the disclosures I have directed bring about a fundamental change in the original offer. That is the phrase derived from SEC publications that Mr. Sterling lays particular stress upon in his letter of June 21, 1988, at page 2.

I am reminded that in the original filings Bank of New York undertook to reflect in the prospectus any facts or events, I am quoting, "arising after the effective date of the registration statement, which individually or in the aggregate represent a fundamental change in the information set forth in the registration statement."

I think it is Irving's contention that the registration statement must be amended because either viewed separately, or at least in the aggregate, subsequent events and my directions and additional disclosures bring about fundamental changes.

To dwell a bit further on the SEC rulings and writings, each side has given me one of those documents to consider. Irving has given me to consider release number 6714, and has called my particular attention to footnote 80. Footnote 80 says something about recent changes to SEC Rule 424. I

am concerned with Rule 424 because Mr. Urowsky proposes to file the supplemental prospectus under Rule 424(b)(3), and takes the position that that constitutes sufficient compliance with the 1933 Act.

Footnote 80 of the SEC ruling to which I have referred, says this:

"The changes to Rule 424 only affect the filing requirements, not the legal determination as to whether information must be provided to investors, and if so, whether such information may be provided in a prospectus supplement without being included in a post-effective amendment."

The Bank of New York asks me to consider a different SEC release. It was cited in Mr. Urowsky's letter of June 22, and it is release number 33–6470.

Footnote 9 of that document says:

"During periods when offers or sales are being made, registrants may file post effective amendments, 1, to include updated financial statements as required by Section 10(a)(3) of the Securities Act; 2, to reflect a fundamental change in the information set forth in the registration statement; and 3, to include any new or changed material information with respect to the plan of distribution.

"Each post effective amendment filed pursuant to these undertakings is determined to be a new registration statement for purposes of determining liability under the Securities Act. For purposes other than these, updating may be accomplished by a prospectus supplement ("stickered") pursuant to subparagraph C of Rule 424.

We see again the sounding of that theme of fundamental change.

So much for SEC writings, to which my direction has been called. The leading case in the Second Circuit which counsel have called to my attention, and which my own research has uncovered, is Securities and Exchange Commission against Manor Nursing Centers, Incorporated, 458 F.2d 1082. The case was decided in 1972.

As the title would suggest, it was an action commenced by the SEC against a corporation and certain individuals charging the defendants with violations of the securities laws, and praying for permanent injunctive relief and other remedies.

It is useful, I think, to dwell on that case a bit because I find some guidance in it with respect to whether the Bank of New York should be required by me at this time to amend its initial registration statement.

The opinion was written for the Court of Appeals by Judge Timbers. I do not think that anyone would suggest that Judge Timbers is soft on securities fraud. The case with which the Second Circuit was confronted arose out of the most blatant fraud imaginable in connection with an original issue.

A particular family owned a 64–bed nursing home in Tenafly, New Jersey. The proprietor of that modest establishment met a securities lawyer who persuaded the family to take its nursing home public. The nursing home was taken public under the creative corporate name of Manor Nursing Centers, Incorporated, which suggested a network, perhaps nationwide, of nursing centers.

There was a registration statement. There was an initial offering prospectus. The various undertakings were made in those original documents. Various statements of facts and presently existing intent were made, but the initial offering got into trouble, and without burdening the record with too much detail, one departure after another from what was said in the original documents took place in a tortured effort to complete the offer to the general public, all basic, all material, all fundamental, all concealed from the general investing public, concealed in the sense that these things were happening, but neither the registration statement nor the prospectus were changed in any way.

Eventually the fraud came to light. The SEC commenced its procedures, and the case in its procedural posture was that everything was over, everything had happened, and the SEC was suing for a declaration of past fraud, fraud accompli, so to speak, and asking that prospective, permanent, injunctive relief be made against the defendants.

So the procedural posture is a little different from this case where things are ongoing. Nonetheless, the case is instructive to me because in order to obtain relief from the federal courts, the SEC had to demonstrate and get the federal judges to agree that the securities laws had been departed from in certain specific ways. It was necessary in order to lay the foundation for relief for the SEC to show that the defendants had done those things, which they ought not to have done, and had not done those things which they ought to have done, so that in the context of the securities laws there was no health in them.

What the Court of Appeals faulted the defendants for was in failing to update the prospectus. There is a general statement in Judge Timbers' opinion in the text: "Post effective developments which materially alter the picture presented in the registration statement must be brought to the attention of public investors."

At that point in the text he drops footnote 14. Footnote 14 is a quote from the text of Professor Loss on securities regulation:

"The way the new facts are brought to the attention of offerees as a matter of mechanics is by putting a sticker on the prospectus and supplementing it otherwise, not by amending the registration statement."

I do not read the Manor Nursing Home as a declaration by the Second Circuit that registration statements need never be amended. The SEC itself, in what I have already read, seems to be saying maybe yes, maybe not, depending on if it's fundamental, quite possibly, yes.

There was an argument in Manor Nursing Centers about the initial registration statement and the defendant's alleged obligation to amend it. The defendant argued that it spoke only as of its effective date, and so there was no need to amend. Judge Timbers said at page 1099:

"Assuming that the registration statement does speak as of its effective date, and Manor did not have to amend its registration statement, appellants were obliged to reflect the post effective developments referred to above in the prospectus."

What Manor Nursing says to me is that even in a case of the most blatant fraud, it nonetheless may be sufficient to make disclosure by updating the prospectus. At least it was that omission, that failure upon which the Court of Appeals focused in Manor Nursing.

Manor Nursing suggests, that is to say, that in certain circumstances a supplemental prospectus or a sticker will be sufficient, and it quoted the footnote to which I referred even in a case of blatant and outrageous fraud.

Whatever defects may have been in Bank of New York's original position that the bank was not required to amend its initial prospectus at all, one cannot, in my view, characterize the Bank of New York's course of conduct as constituting blatant and outrageous fraud.

The issue of whether additional disclosures had to be made at all was litigated, and I have said that some additional disclosures must be made, although not all of them that the Irving bank requested. But it is a course of conduct bearing no meaningful resemblance on the part of the Bank of New York to that egregious conduct involved in Manor Nursing. And I think that the timing involved, the July 9th deadline imposed by the Federal Reserve, is a factor which a court of equity is bound to consider, and I also consider the fact that the members of the investing public that we are concerned with, are holders of Irving shares, or people considering purchasing Irving's shares, who unless they had been on the far side of the moon for the past half year, are aware of and presumably many of them have been following this well publicized litigation.

These are all factors which in my view militate against requiring an amendment to the registration statement. They militate against it because in these particular circumstances a supplemental prospectus should be sufficient. The circumstances militate against it because to rule otherwise would bring about an element of risk to the Bank of New York's being able to go

forward with its offer at all. I would not let that risk be the decisive factor if I felt that the circumstances cried aloud for an amendment to the registration statement, but I do not perceive that need, and to return to the point from which I began on this aspect of the case, an important reason why I do not perceive that need is because I do not perceive the post-May 17 events, and their subsequent developments and litigation, as bringing about a fundamental change in the original offer. Material, yes. Fundamental, no.

I think that Mr. Urowsky is right when he asks me to keep that distinction in mind. The disclosure was ordered because certain aspects seemed to me material, but I am not satisfied, I am not persuaded by Irving that what has been going on here most recently rises to that level of fundamental change.

So there are a number of components in my opinion. It is that I am not satisfied of the fundamental nature of the changes.

It is that I am not satisfied that sufficient protection cannot be given to shareholders by an updated prospectus.

It is because I am not satisfied that it would be fair in the totality of the circumstances to impose upon the Bank of New York a risk of having the whole ship sink under the added burden of further regulatory review de novo in the hands of the SEC.

Therefore, I reject the application to require the Bank of New York to amend its original registration statement.

I think that I have dealt with the issues before me, except for one, and that is the form of order granting a preliminary injunction which should be made in the case. I have rival versions before me.

I think given what has happened most recently, neither of them really fit the bill. For example, I am not prepared to sign the Wachtell order, which, among other things, directs the Bank of New York to file an appropriate amendment to its registration statement, as I just said I will not make that direction.

On the other hand, I am not prepared to sign the Sullivan & Cromwell order which directs the dissemination of a prospectus supplement "substantially in the form annexed hereto as Exhibit A."

Well, there are going to have to be some changes, and what does "substantially" mean? What I propose to do is to adopt the Sullivan & Cromwell order. However, the first paragraph will say:

"Ordered, that the motion of plaintiff Irving for a preliminary injunction is granted to the extent the defendant, the Bank of New York, Incorporated, its directors, officers, agents and all persons acting in concert with them, who receive actual notice of this order by a personal service or otherwise, are hereby preliminarily enjoined, directly or indirectly, from consummating BNY's current offer for Irving's shares (including purchasing or accepting for purchase any such shares), until six business days following the dissemination of a prospectus supplement conforming to the court's oral rulings of today's date, incorporated herein by reference."

And then resuming from the draft: "which shall supplement BNY's prospectus dated March 18, 1988."

At least it seems to me that that will accomplish what needs to be done, although I will hear counsel further on the point if they wish, not for the purpose of rearguing the rulings I have just made, but only to advise me as to whether the rulings are being properly implemented.

And the last question I need to discuss with counsel is that both forms provide for the posting by Irving of a bond as a condition for the preliminary injunction. That is, of course, the usual practice under Rule 65, but quite often disputes arise as to either the need for a bond in the circumstances of the particular case, or the amount that should be given, and before signing off on the order, which I propose to do today, I would like to hear counsel address that issue.

All right, gentlemen, if there is anything you need me to say further to clarify anything that's obscure or anything else you

would like to say on the points I raised, now is the time, in any order you prefer.

[Counsel for defendant thereafter waived the requirement of a bond and the hearing was adjourned.]